ALABAMA & VICKSBURG RAILWAY COMPANY *v.* SIMON KUHN.

1. FALSE IMPRISONMENT. *Code* 1892, § 1272.

An affidavit averring that a person jumped off a moving railroad train does not charge an offense under code 1892, § 1272, making it unlawful for any person not a passenger or employe in operating the railroad to jump on or off a moving train, and the arrest and imprisonment of a passenger under such an affidavit, even after a pretended conviction by a magistrate, renders the party instigating such proceedings liable in an action for false imprisonment, begun after such void proceedings had been quashed on appeal from the pretended conviction.

2. SAME. *False recital in judgment. Void affidavit.*

A false recital in a judgment of a justice of the peace, afterwards vacated, that the accused pleaded guilty, is no defense to an action by him for false imprisonment against the prosecutor, whose affidavit charged no offense and was utterly void.

FROM the circuit court of Warren county.
HON. OLIVER W. CATCHINGS, Special Judge.

Kuhn, the appellee, was the plaintiff and the railway company, the appellant, was the defendant in the court below.

In March, 1899, an agent of the railway company made an affidavit against Kuhn, before a justice of the peace, charging him with wilfully jumping off of a moving train of cars. It was claimed that the prosecution was based on § 1272, code 1892, which was in these words: "If any person, other than passengers or employes engaged in operating the railroad, shall wilfully climb, jump or step upon, or in any way attach himself to, or shall jump off a locomotive, tender or car while in motion on a railroad track or siding, he shall, upon conviction, be fined not less than five dollars nor more than twenty-five dollars, or be imprisoned in the county jail not less than five days nor more than twenty-five days, or both."

The justice of the peace issued a warrant for Kuhn, placed it in the hands of a special constable, who arrested him. Kuhn was carried before the justice, and that officer entered a judgment against him, fining him, etc., reciting that he had plead guilty to the affidavit. Kuhn appealed to the circuit court, where the proceeding against him was dismissed because of the defect in the affidavit. Kuhn was, in truth, a passenger on the train from which he stepped or jumped. Other facts are stated in the opinion. This suit was begun after the affidavit had been disposed of by the circuit court.

*Mc Willie & Thompson*, for appellant.

There is an absence of evidence tending to show the want of good faith on the part of the railway company in the prosecution. There is not a scintilla of proof to show any conspiracy between the railway company, or any of its agents, and the justice of the peace or the constable. And yet, in the absence of such evidence, the learned court below gave a peremptory instruction for the plaintiff. This was certainly erroneous. An examination of the authorities will show some diversity of opinion as to the effect of a conviction in the court of original

jurisdiction on suits for malicious prosecution based on the prosecution after a reversal, on appeal, of the conviction. The great weight of authority is to the effect that a conviction by the court of original jurisdiction is conclusive evidence of the existence of probable cause for the prosecution. There are a few cases that deny the conclusive effect of a judgment of guilt, afterward reversed, but even these cases treat such a conviction as making out a strong *prima facie* case of the existence of probable cause.

The following authorities maintain the position that a conviction, though afterwards reversed on appeal, is conclusive evidence of the existence of probable cause and an absolute bar to a civil suit for a malicious prosecution: *Parker* v. *Huntington*, 7 Gray (Mass.), 36, s.c. 66 Am. Dec., 455; *Parker* v. *Farley*, 10 Cush. (Mass.), 279; *Parker* v. *Huntington*, 2 Gray (Mass.), 124; *Griffas* v. *Sellars*, 2 Dev. & Bat. (N. B.), 492, s.c. 31 Am. Dec., 422; *Reynolds* v. *Kennedy*, 1 Wils., 232; *Whitney* v. *Peckham*, 15 Mass., 243; *Griffas* v. *Sellars*, 4 Dev. & Bat. (N. C.), 176; *Cloon* v. *Gerry*, 13 Gray (Mass.), 203; *Denneyhey* v. *Woodsum*, 100 Mass., 197; *Koye* v. *Kean*, 18 B. Mon. (Ky.), 839; *Heerman* v. *Brookerhoff*, 8 Watts, 240; *Adams* v. *Bicknell*, 126 Ind., 210, s.c. 22 Am. St. Rep., 576; Cooley on Torts (2d ed.), 185; Stephen on Malic. Pros., 101; *Clements* v. *Oderless, etc., Co.*, 67 Md., 476, s.c. 1 Am. St. Rep., 409; *Ritting* v. *Ten Eyck*, 82 Ind., 421, s.c. Am. St. Rep., 505; *Crescent, etc., Co.* v. *Butchers', etc., Co.*, 120 U. S., 141. The question is fairly well discussed in Newell on Mal. Pros., pp. 253, 254.

Of course, if a combination between a corrupt court and the plaintiff be shown, the principles announced in these decisions would not apply; but there is not a scintilla of evidence here to show any combination or corruption. The following cases treat a conviction in the court of original jurisdiction as not conclusive of the case before the court, but they all proceed upon the idea that it is strong *prima facie* evidence of the ex-

istence of probable cause: *Goodrich* v. *Warner*, 21 Conn., 432; *Womac* v. *Circh*, 29 Gratt. (Va.), 192; *Ross* v. *Hixon*, 46 Kan., 550, s.c. 26 Am. St. Rep., 123, s.c. 12 L. R. A., 760. The advice of a magistrate constitutes probable cause. *Ball* v. *Rawles*, 93 Cal., 222, s.c. 27 Am. St. Rep., 174.

If the court sees fit to follow what seems to us improper decisions, and to hold that the conviction was only *prima facie* evidence of the existence of probable cause, even then this case must be reversed, because of the granting of the peremptory charge. There ought to be proved in cases of this kind something in addition to the mere fact of the prosecution. That fact alone does not make out a *prima facie* case for the plaintiff. There must be something shown in addition—either direct evidence of or circumstances which tend to show malice in the prosecution. We cannot find a word or a line or a syllable in the record which adds anything to the bald fact that the plaintiff was prosecuted, arrested, tried, convicted, appealed and was discharged. There is nothing to show want of good faith in the prosecution, nothing to show malice on the part of the railway company or any one who had any connection with the prosecution, and the motion for a new trial ought to have been sustained.

Thus far we have treated the case as if the arrest of Kuhn was upon a valid criminal proceeding. The railway company surely does not occupy a worse position than it would have occupied had it accused plaintiff of a crime. That it charged him with something less than a crime, if it cuts any figure in the case, ought to militate in favor of the defense. Kuhn was really guilty of the charge made against him, and this he does not deny and never has denied. The facts which he admits now, in truth constitute probable cause. He admits that he jumped off a moving train of cars, the act made criminal by the statute, and the peremptory instruction should have been for the defendant, since there is not a particle of evidence that the railway agent who made the affidavit knew he was a pas-

senger and not within the statute.    *McNulty* v. *Walker*, 64 Miss., 198.

There is another view of the case, one which treats the arrest as having been made under a void proceeding and without support from the affidavit or warrant.    If the case is worked out on this line, the first act in the drama, was either that of the justice of the peace·in issuing the warrant or that of the constable when he took Kuhn into custody.    It is said in the books that, to make a person liable for damages for false imprisonment for an arrest on a void warrant, there must be something more than the mere calling upon a magistrate to exercise his jurisdiction.    12 Am. & Eng. Enc. L. (2d ed.), 755, and authorities cited.    The case of *Langford* v. *Boston*, *etc.*, *R. R. Co.*, 144 Mass., 431, is decidedly in point.

In the case at bar the affidavit was defective, and if it is said the warrant was therefore void, then the principle just announced is clearly applicable.    There was not a particle of evidence to show that appellant's agent did anything more than make the affidavit, which affidavit was true.    The issuance of the warrant was wholly the act of the justice of the peace, who necessarily, although erroneously, determined that the facts stated in the affidavit constituted a crime.    *Ball* v. *Rawles*, *supra*.

The railway company did not arrest Kuhn.    It did not instigate the constable to arrest him directly, and it did nothing more than to procure from the justice of the peace the issuance of a warrant for his arrest.    The warrant is in the record, and it is not void.    It is perfectly regular on its face and is a valid warrant.    It is true that on the face of the warrant it commands the arrest of Kuhn for "train jumping," and it may be said that train jumping is not a crime, but it will not do to say°⸴ that a warrant is utterly void because of a general designation of the offense for which it issued; otherwise, half the warrants issued in the state would be void on their faces.

An action for false imprisonment cannot be sustained if the

imprisonment be under legal process.  If the imprisonment be under such process, the party arrested can maintain an action for a malicious prosecution, if the facts otherwise warrant it, but cannot maintain an action for false imprisonment.  *Rich* v. *McInerny*, 103 Ala., 345, s. c. 49 Am. St. Rep., 32.

It seems to us exceedingly harsh and unjust that a defendant should be held for a false imprisonment where he goes before a properly constituted court and makes a statement of facts which are true, and submits the truth of a case to an officer, and that officer, a judicial one, adjudges the facts stated to constitute a crime and issues a warrant thereon.

An action for false imprisonment at the common law was an action of trespass.  A suit for a malicious prosecution was an action on the case.  This historical reference to forms of action illustrates what we are about to say.  The railway company in this case is not prosecuted for the direct consequences of its acts.  It has been held liable for the indirect consequences thereof.  A declaration for trespass against it at the common law which averred that the railway company by its representative made known to the justice of the peace that Kuhn had jumped off a moving train, and, in consequence thereof, the justice considered Kuhn guilty of crime, and reduced the statement made by the company's agent to writing and took his oath to the same, and thereupon the justice of the peace issued a warrant, regular in form, for Kuhn's arrest and placed the same in the hands of a constable, who took Kuhn into custody, would not state a cause of action, even if the declaration further showed that the charge was not sufficient to constitute a crime.  As an action for trespass it would be demurrable, because the damages would be consequential, and not the direct result of the acts of the company's agent.  The suit at common law would have to assume the form of an action for trespass on the case.  But an action for false imprisonment was not an action on the case; therefore the only remedy at common law

would have been a suit for malicious prosecution, which was an action for trespass on the case.

The abolition of forms of action did not create causes of action. If Kuhn could not have maintained a suit on the facts of his case at common law, he cannot do so now; he could not have maintained an action for false imprisonment, an action of trespass, at common law, but would have been forced to an action for malicious prosecution, an action on the case, and his rights must now be tested as if his action were not for false imprisonment, but for a malicious prosecution. If so, a peremptory instruction ought not to have been given in his favor, unless the court holds his conviction in the court of original jurisdiction is not evidence for defendant of probable cause. To so hold would be in the face of all the authorities.

The sufficiency of the charge upon which the prosecution was instituted is not essential to the maintenance of an action for malicious prosecution. A defendant in such an action cannot be heard to contend that the complaint upon which he procured the arrest to be made was defective. 3 Lawson's Rights and Remedies, sec. 1090. If this be a correct statement of the law as presented by the learned author, it follows that the present case must be considered as an action for a malicious prosecution, and that to affirm the judgment this court must hold that the conviction of Kuhn (whether he plead guilty or was convicted upon a trial) was not evidence for defendant of the existence of probable cause, contrary. to authorities. Add to this the principle announced in the Alabama case, *Rich* v. *McInerny*, 103 Ala., 345, s.c. 49 Am. St. Rep., 32, that if an imprisonment be made under legal process, an action for false imprisonment cannot be maintained, and the argument is much strengthened.

The railway company did not take the law in its own hands. It did not arrest Kuhn. He was arrested only in consequence of an effort by the company to enforce the law as erroneously understood. The facts were submitted to the properly consti-

tuted legal authority, and the court passed judgment and issued the warrant. It will not do to say that there was abundant proof to show a want of probable cause. The jury should have been permitted to pass on that question, if there was any evidence which tended to show the contrary. The conviction was such evidence.

*Dabney & McCabe,* for appellee.

It was the duty of the court, on the evidence as it stood, either to give a peremptory instruction for the plaintiff or the defendant leaving it to the jury to assess the damages. The plaintiff had proved that the defendant caused his arrest under a void warrant. This was established beyond any question, and, was not denied by the defendant. If the law was with the defendant on the case as shown, it was entitled to a peremptory instruction. If the plaintiff was entitled to go to the jury at all on the case, he was entitled to a peremptory instruction, because, as we have stated, there was no conflict, there was no dispute about the facts, and they either made out a case, or they failed to make a case, for the plaintiff.

Where a party, for his own private ends and to secure to himself personal benefit, and without any interest in the public welfare or the enforcement of law and order, and without warrant of law, procures a magistrate or other officer, by affidavit, or otherwise, to arrest a person for doing a thing which everybody ought to know, and must be presumed to know, is not a violation of the law, he cannot escape under the cloak that he simply reported the matter to the magistrate and the magistrate caused the arrest.

It will not be denied, as the authorities are not conflicting on the proposition, that if a private person, without warrant, procure an arrest, he is liable for false imprisonment. Why should he not be liable if he sues out a warrant, and both the affidavit and the warrant show on their faces that the thing

which the accused is charged with is as harmless as walking upon a thoroughfare or going to church?

Neither the railway company nor its agent, Johnson, pretended to be in ignorance as to the law. Mark that.

In the case of *Gifford* v. *Wiggins*, 18 L. R. A., 356, the court says:

"It is to be observed that the object of this prosecution was not the enforcement of any private right on the defendant. He did not make the complaint on his own account, or for his own private benefit. The complaint was for an alleged violation of public law, in which he represented, not himself, but the public—an important distinction which courts have sometimes overlooked, and which counsel for plaintiff seems to have failed to have noticed in the citation of cases. It seems to be by an almost unbroken line of authorities that if a person merely lays a criminal complaint before a magistrate, in a matter over which the magistrate has a general jurisdiction, and the magistrate issues a warrant upon which the person charged is arrested, the party laying the complaint is not liable for an assault and false imprisonment, although the particular case may be one in which the magistrate had no jurisdiction."

There are many cases holding that an arrest on a void warrant makes the person causing it liable in any event. *Thorpe* v. *Wray*, 68 Ga., 359; *Burns* v. *Barber*, 6 Ill., 401; *Livingstone* v. *Burroughs*, 33 Mich., 511; *Boeger* v. *Langenneberg*, 97 Mo., 390, s.c. 10 Am. St., 322; *Hainter* v. *Ives*, 4 Neb., 122; *Wilson* v. *Robinson*, 6 Howard Pr. Rep. (N. Y.), 110; *Curry* v. *Pringle*, 11 Johns. (N. Y.) 444; *Comfort* v. *Fulton*, 13 Abb. Pr., N. Y. Sup. Ct., 276; *Frazier* v. *Turner*, 76 Wis., 562; *Genzenleuchter* v. *Niemeyer*, 64 Wis., 320, s.c. 54 Am. Rep., 616; *Barker* v. *Braham*, 2d W. Bl. Rep., 865. The cases apparently opposed arose where the prosecutions were in good faith and for the public good, and are not authority here, not being in point.

We wish to refer to one case which we think entitled to weight—that of *Wachsmuth* v. *Merchants National Bank*, decided by the supreme court of Michigan, 21 L. R. A., 278. In that case a member of the board of mayor and aldermen, in the performance of his duty, made a motion that the bank be required to give security for the money which was deposited by the city in it, a large amount. The officers of the bank took offense at this insinuation, and caused the alderman who made that motion before the board to be arrested on the charge of libel. Subsequently a suit for damages was brought by the alderman against the bank for false imprisonment. In the opinion the court say that because the affidavit showed on its face that the communication was privileged, the warrant was void, not voidable, and therefore the defendant in the suit could not justify upon the ground that he merely reported to the magistrate the facts, and that the magistrate issued the warrant. They say that the defect was jurisdictional. There being no jurisdiction on the part of the magistrate, the whole proceeding was void, and hence no justification arose from the fact that the warrant was issued by the magistrate. The principle applies with equal force in this case.

CALHOON, J., delivered the opinion of the court.

Code 1892, § 1272, which denounces a penalty for getting on or off a moving train, especially excepts passengers and train employes from its operation. The plain and uncontradicted facts of the record are that Mr. Kuhn was a passenger on a train of appellant to his destination, the city of Vicksburg. While the train was in motion in that city, Mr. Kuhn, who was a traveling man, according to his custom, at a point convenient to him, stepped off. On the same train was an employe of the appellant, named Johnson, whose duty it was, by direction of the company, through its superintendent, to get on all trains at certain points, and observe and cause to be arrested and tried all persons jumping on or off a moving train.

His instructions made no exception in favor of passengers. The next morning after Mr. Kuhn had stepped from the train, Mr. Johnson made an affidavit before a justice of the peace, charging him with wilfully jumping from a moving train. This affidavit was void and charged no offense, in that it did not charge that Mr. Kuhn was not a passenger or employe. Nevertheless, on it the justice issued his warrant of arrest, and his special constable arrested Mr. Kuhn and marched him to the office of the justice of the peace, where he was tried under the prosecution of appellant, through its employe, Johnson, convicted by the justice, and sentenced to pay a fine, and, in default of its payment, that he be sent to jail, and he found it difficult to obtain time to make an appeal bond. But for the intervention of a bystander, it seems he would have been incontinently hurried off to jail. He was restrained of his liberty about one hour and a half. On his appeal, the case against him was, of course, dismissed. Pending his appeal, he saw Mr. Ford, the superintendent, who laughed at him, and said the arrest was under his general instructions to the employe, Johnson, and that the railroad had a law of its own—to arrest all persons jumping from moving trains. The fact of the arrest was published in the newspapers. One of the expressions of the superintendent, when he laughed at Mr. Kuhn, was, "that this is the way we do people who jump off trains." The record of the justice of the peace shows a plea of guilty. If there had been, it would have been a plea of guilty to a charge setting out no offense. But in fact, uncontradicted, there was no such plea. On the contrary, there was a trial, witnesses produced on both sides and examined, and Mr. Kuhn had the train conductor to testify that he was a passenger who had paid his fare, and the statute was read to and ignored by the justice. Mr. Kuhn brought his action for false imprisonment, and the court charged the jury to find for him and assess the damages sustained because of his wrongful arrest, and the verdict gave him $500 damages.

The arrest was reckless and wanton, and, under the facts disclosed by the record, it is idle to discuss questions of probable cause or express malice. The damages awarded were extremely reasonable, even as compensation. If a railroad company may with impunity arrest its own passenger, whom it is its business to protect, in the teeth of the express saving clause of the very statute under which it professes to proceed, and subject him to the indignity of public seizure of his person, and being marched along the public streets by a constable for trial under its prosecution, and subjecting him to the mortification of publication in the newspapers, as the usual result of such proceedings, then the protection of personal liberty is slight indeed.

*The action of the court below and the action of the jury are in all respects approved, and the case affirmed.*